UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LORENZO JOHNSON #176204,

    Plaintiff,

v.    Case No. 2:17-cv-00125
    HON. GORDON J. QUIST

FRED GOVERN,

    Defendant.
_____/

REPORT AND RECOMMENDATION

Plaintiff Lorenzo Johnson, an inmate at the Kinross Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendant ARUS Fred Govern, who is employed by the MDOC at the Marquette Branch Prison (MBP). The complaint alleges events that occurred while Plaintiff was incarcerated at MBP. After conducting an initial review of the complaint, the Court ordered service because the allegations in the complaint were not frivolous or malicious, and stated a claim upon which relief could be granted. (ECF No. 4). Defendant filed a motion to dismiss. (ECF No. 7). Plaintiff then filed a First Amended Complaint. (ECF No. 12) and a response to Defendant's motion to dismiss. (ECF No. 14). Defendant filed a motion to dismiss Plaintiff's First Amended Complaint. (ECF No. 17). Plaintiff filed a response. (ECF No. 19).

Plaintiff alleges in his first amended complaint that he filed a grievance on January 15, 2017, alleging sexual harassment against a prison official. On January 17, 2018, Defendant Govern warned Plaintiff that if he did not sign off on the grievance against his co-worker he would teach plaintiff a lesson and "put a case on you, you think you smart, now try me." Defendant Govern then "forged" a notice of intent and placed Plaintiff on a 90 day telephone restriction.

Plaintiff argues that Defendant Govern retaliated against him by forging the notice of intent and giving him the 90 day telephone restriction due to Plaintiff's grievance against Defendant's co-worker. Additionally, Plaintiff asserts violations of his equal protection and due process rights, and state law claims of intentional infliction of emotional distress and fraudulent misrepresentation. Plaintiff requests an award of $300,000 in compensatory damages and $600,000 in punitive damages.[1]

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 355

---

[1] Plaintiff's original complaint included an Eighth Amendment claim. Plaintiff's amended complaint abandons that claim and plaintiff has conceded that his original Eighth Amendment claim should no longer be considered part of this action.

2

U.S. at 638.  While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions.  *Delorean*, 991 F.2d at 1240.  "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

Defendant moves for dismissal based upon qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232-233.  If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted.  The court may consider either approach without regard to sequence. *Id*.

3

Defendant argues that as a matter of law the temporary loss of privileges involving a 90day telephone restriction cannot satisfy the adverse action requirement necessary to support a retaliation claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The adverseness inquiry is an objective inquiry that does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). The Sixth Circuit explained the adverse action inquiry in rejecting a qualified immunity defense:

> When deciding whether the issuance of a misconduct ticket rises to the level of an adverse action, we look to both the punishment Maben could have faced and the punishment he ultimately did face. *See Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation."); *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002) (looking to what the prisoner "could have been sentenced to ... if he had been found guilty"). The sanctions that Maben faced for a Class II misconduct included: "[t]oplock (confinement to quarters), not to exceed five days ...."; loss of privileges for up to 30 days; assignment of extra duty; and,

4

restitution and/or disgorgement. (Maben Br., Disciplinary Sanctions, SA21; R. 13-2, Misconduct Hearing, PageID # 67.) The actual punishment resulting from Maben's misconduct hearing was loss of privileges for seven days. These privileges included the rights to access exercise facilities, to attend group meetings (including Bible class), to use the telephone, to have visitors, to access the general library, and to access the activity room.

In *Hill v. Lapin*, this Court found that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse." 630 F.3d 468, 474 (6th Cir. 2010). In *Noble v. Schmitt*, this Court denied qualified immunity where the conduct at issue was that "Defendants restricted his privileges after he filed a considerable number of grievances against them." 87 F.3d 157, 162 (6th Cir. 1996). In *Harbin–Bey v. Rutter*, when concluding that the prisoner suffered no adverse action, the Court noted that the prisoner "did not lose any privileges as a result of the [Notice of Intent to Conduct an Administrative Hearing]." 420 F.3d 571, 579 (6th Cir. 2005).

In other cases, we have found sufficiently adverse punishments that were "at least as severe as" the one imposed here, including confiscating legal papers and other property, *Bell*, 308 F.3d at 604, subjecting the prisoner to retaliatory cell searches, *id.*, and damaging a prisoner's typewriter, *LaFountain v. Harry*, 716 F.3d 944, 948–49 (6th Cir. 2013); *see also Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) ("[E]ven though his Class I misconduct was reduced to a Class II misconduct at his hearing, Watson lost his radio as a result and the Class II misconduct became part of his prison record. This is substantially more than a *de minimis* consequence for someone confined in a prison cell."); *Barr v. Diguglielmo*, 348 Fed.Appx. 769, 774 (3d Cir. 2009) (finding an adverse action where a prisoner "was prohibited from participating in *any* prison activities (including religious activities ...)"); *Reynolds v. Green*, 25 Fed.Appx. 256, 261 (6th Cir. 2001) (finding an adverse action where a prisoner was transferred from a facility where he could "come and go with permission," to a facility where he could not); *Hall v. Sutton*, 755 F.2d 786, 787–88 (11th Cir. 1985) (holding that an inmate stated a First Amendment retaliation claim based upon the confiscation of his tennis shoes). *But see Ingram v. Jewell*, 94 Fed.Appx. 271, 273 (6th Cir. 2004) (finding that a loss of fourteen days of privileges did not constitute adverse action).

5

> In all, the deprivation of privileges is hardly "inconsequential"—indeed, they are all that prisoners really have. Furthermore, the issuance of the minor misconduct ticket subjected Maben to the risk of even more significant sanctions, including confinement to his cell, which is certainly not "inconsequential." *See Hill*, 630 F.3d at 474. Because this case did not involve *de minimis* retaliatory action, this question cannot be resolved as a matter of law. It is for the factfinder to decide whether the deprivation of those privileges "poses a sufficient deterrent threat to be actionable." *Bell*, 308 F.3d at 603.

*Maben v. Thelen*, 887 F.3d 252, 266–267 (6th Cir. 2018).  Based upon the decision in *Maben*, Plaintiff's allegation that he was subjected to a 90 day telephone restriction is sufficient to state a retaliatory claim and support adverse action.  Similarly, Plaintiff's allegations are sufficient to state each element in support of a retaliation claim.  In the opinion of the undersigned, Defendant is not entitled to qualified immunity on this issue based upon the allegations in the complaint.

Plaintiff argues that his Fourteenth Amendment right to due process and equal protection were violated by Defendant.  Plaintiff asserts that Defendant violated his due process rights by denying him a hearing before imposing restrictions.  "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).   To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Analysis of a procedural due process claims involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  The Supreme Court long has held that the Due Process Clause does not protect every

6

change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Similarly, courts have concluded that the loss of telephone privileges does not implicate due process interests requiring a pre-deprivation hearing:

> Nor does a 90 day phone restriction violate Plaintiff's right to procedural due process. *See Johnson v. Vroman*, No. 1:06-cv-145, 2006 WL 1050497, at *2 (W.D. Mich. Apr. 19, 2006) (a 6 month restriction on telephone privileges does not amount to an atypical or significant hardship in relation to the ordinary incidents of prison life that would trigger the protection of the Due Process Clause) (citing *Boriboune v. Litscher,* 91 Fed.Appx. 498, 500 (7th Cir. 2003) (short-term loss of telephone privileges and disciplinary segregation implicated no liberty interest and triggered no due process protection); *Blum v. Fed. Bureau of Prisons,* No. 98-1055, 1999 WL 638232, at *3 (10th Cir. Aug. 23, 1999) (protected liberty interest not triggered by restrictions on store privileges, telephone calls, and access to a radio during disciplinary segregation); *Larue v. Blodgett,* No. 95-35936, 1996 WL 228497, at *1 (9th Cir. May 6, 1996)

7

>(temporary loss of telephone privileges, possession of a radio and visitation did not meet *Sandin* requirements); *Schmitt v. Mulvey,* No. 04-10717, 2006 WL 516755, at *3 (D. Mass. Mar. 1, 2006) (loss of television, radio and telephone privileges for a couple of months does not amount to an atypical and significant hardship); *Reyes v. Nash,* No. 05-2136, 2006 WL 361387, at *6 (D.N.J. Feb. 15, 2006) (loss of telephone privileges and disciplinary segregation are not atypical and significant hardships); *Castleberry v. Acker,* No. 05-cv-74271, 2006 WL 250019, at *2 (E.D. Mich. Jan. 31, 2006) (loss of telephone privileges for twenty-four months is not an atypical and significant hardship); *Dumas v. Garnett,* No. 05-210, 2006 WL 149002, at *4 (S.D. Ill. Jan. 19, 2006) (inmates have no liberty interest in telephone privileges); *Rogers v. Justice,* No. 5:05-cv-65, 2005 WL 2860989, at * 1 (E.D. Tex. Oct. 31, 2005) (loss of commissary, telephone and visiting privileges does not trigger due process protection); *Harmon v. Buss,* No. 3:05-cv-0060, 2005 WL 2045776, at *1 (N.D. Ind. Aug. 24, 2005) (loss of telephone privileges does not implicate a liberty interest)). Therefore, Plaintiff's due process claims are properly dismissed.

*Allen v. Alexsander*, No. 2:16-CV-245, 2017 WL 2952929, at *5 (W.D. Mich. July 11, 2017). Therefore, in the opinion of the undersigned, Plaintiff's due process claim should be dismissed because the denial of a hearing prior to placement on a telephone restriction does not implicate a liberty interest that could trigger due process protections.

Plaintiff asserts that Defendant violated Plaintiff's right to equal protection by arbitrarily denying him a hearing and failing to follow procedures that would be applied to all prisoners similar situated to Plaintiff. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right

8

or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Because a fundamental right is not implicated in this case and Plaintiff does not allege that he is a member of a suspect class, he is not entitled to strict scrutiny. Instead, the decision to deny Plaintiff a hearing need only be rationally related to a legitimate governmental interest. *See United States v. Kras*, 409 U.S. 434, 446 (1973); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). At this point, it is unclear why Plaintiff was denied a hearing and further factual development of this issue is necessary. At this stage of the proceedings, it appears that Plaintiff has presented allegations in his complaint that could arguably support a violation of his equal protection rights.

Defendant argues that Plaintiff failed to properly allege state law claims of intentional infliction of emotional distress and fraudulent misrepresentation. Plaintiff alleges that Defendant threatened to institute a new criminal case against Plaintiff. To prove that Defendant intentionally inflicted emotional distress, Plaintiff must allege and establish:

> (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Vredevelt v. GEO Group, Inc.,* 145 Fed.Appx. 122, 135 (6th Cir.2005). Such conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham v. Ford,* 237 Mich.App. 670, 604 N.W.2d 713, 716 (1999). The court in *Graham* further explained this conduct as follows:
>
>> It is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. *Roberts v. Auto–Owners Ins. Co.,* 422 Mich. 594, 602–603, 374 N.W.2d 905 (1985), quoting Restatement Torts, 2d,

9

> § 46, comment d, pp. 72–73. In reviewing a claim of intentional infliction of emotional distress, we must determine whether the defendant's conduct is sufficiently unreasonable as to be regarded as extreme and outrageous. *Doe, supra* at 92, 536 N.W.2d 824. The test is whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts, supra* at 603, 374 N.W.2d 905.

*Jones v. Muskegon Cty.*, 625 F.3d 935, 948 (6th Cir. 2010).

In the opinion of the undersigned, Plaintiff has alleged conduct that may satisfy the elements necessary to state an intentional infliction of emotional distress claim. Plaintiff alleges that Defendant threatened him with a criminal complaint if he failed to sign-off on his grievance causing him mental anguish. Taken in the light most favorable to Plaintiff, Plaintiff has set forth factual allegations that could support a claim of intentional infliction of emotional distress under Michigan law.

Plaintiff asserts that Defendant committed an act of fraud by intentionally erasing Plaintiff's request for a hearing on the form and falsely indicating that Plaintiff agreed to the proposed disposition and waived his right to a hearing. Although, this act may be relevant to support Plaintiff's other causes of action, the undersigned concludes that such conduct does not support a claim of common law fraud.

> As a general rule, actionable fraud consists of the following elements: (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. *Hi-Way Motor Co. v. Int'l*

10

>    *Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813 (1976); *Irwin v. Carlton,* 369 Mich. 92, 94, 119 N.W.2d 617 (1963); *Candler v. Heigho,* 208 Mich. 115, 121, 175 N.W. 141 (1919); see also *Arim v. General Motors *285 Corp.,* 206 Mich.App. 178, 195, 520 N.W.2d 695 (1994).

*M & D, Inc. v. McConkey*, 226 Mich. App. 801, 573 N.W.2d 281, 284–85 (1997), *opinion vacated* (Nov. 26, 1997), *opinion reinstated sub nom. M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 585 N.W.2d 33 (1998).  In the opinion of the undersigned, Plaintiff has not set forth the elements of a common law fraud action.  Plaintiff has not alleged that Defendant made a misrepresentation with the intent that Plaintiff act upon the misrepresentation, or that Plaintiff actually relied on the misrepresentation causing him to sustain damages.  *Benetts v. MIS Corp.*, 607 F.3d 1076, 1101 (6th Cir. 2010).  Accordingly, it is recommended that the Court dismiss Plaintiff's fraud cause of action for failure to a state a claim upon which relief may be granted.

Therefore, it is recommended that Defendant's Motion to Dismiss (ECF No. 7) be denied as moot and that Defendant's motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 17) be granted, in part, dismissing Plaintiff's due process and fraud claims.  It is recommended that the motion be denied as to Plaintiff's retaliation, equal protection, and intentional infliction of emotional distress claims.

    /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated:   September 12, 2018

11

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).