UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LORENZO JOHNSON #176204,

    Plaintiff,

v.

FRED GOVERN,

    Defendant.

_____/

Case No.  2:17-cv-00125

Hon.  Gordon J. Quist
U.S. District Judge

**REPORT AND RECOMMENDATION**

**I.  Introduction**

This is a civil rights action brought by former state prisoner Lorenzo Johnson pursuant to 42 U.S.C. § 1983. Johnson claims that his federal rights were violated while he was incarcerated at the Marquette Branch Prison. Johnson says that Defendant Govern retaliated against him, in violation of the First Amendment, and denied him equal protection, in violation of the Fourteenth Amendment.

Both of these claims stem from the alteration or modification of a Notice of Intent to Conduct an Administrative Hearing (NOI) form to indicate that Johnson agreed to accept sanctions for abuse of telephone privileges.[1] The parties agree that the form was altered, but they disagree about why. Johnson says Govern altered

---

[1] Other claims were dismissed by the Court following Rule 12(b)(6) motions filed by Defendant Govern. (ECF Nos. 7 and 17 (motions to dismiss); ECF No. 22 (Report and Recommendation); ECF No. 26 (Order adopting in part and rejecting in part Report and Recommendation).)

this form, against Johnson's will, in retaliation for a Prison Rape Elimination Act (PREA) grievance Johnson filed against Corrections Officer Dahlstrom. Govern disagrees. He says (1) that Johnson agreed to the alteration, and (2) that he (Govern) did not know about the grievance.

The critical issue here is one of timing: when did Govern learn about Johnson's grievance? If the evidence potentially shows that Govern learned about Johnson's PREA grievance before January 17, 2017, then a genuine issue of material fact remains relating to the retaliation claim. But if the parties' filings show, instead, that Govern learned about this PREA grievance after January 17, then Johnson has failed to allege facts showing a causal connection between his protected conduct (the filing of the PREA grievance) and the alleged adverse action by Govern (the alteration of the NOI form against Johnson's will).

I have reviewed the pleadings and conclude that no genuine issue of material fact exists as to when Govern learned of the grievance: he learned of the PREA grievance after meeting with Johnson on January 17. This same conclusion necessitates the dismissal of Johnson's equal protection claim. Johnson's equal protection claim is also tied to the proposition that Govern altered the NOI to retaliate against Johnson. But, as mentioned above, the facts indicate that Govern did not know about the grievance at the time of the alteration. Thus, Johnson has failed to show that Govern treated him in an arbitrary and discriminatory manner or differently than how Govern treated other similarly-situated prisoners.

Defendant Johnson has filed a motion for summary judgment based upon qualified immunity from liability. (ECF No. 61.) I conclude that no genuine issue

of material fact remains relating to the alleged constitutional violations. Accordingly, I respectfully recommend that the Court grant Govern's summary judgment motion and dismiss this case.

## II. Relevant Facts

In January of 2017, Johnson was confined at the Marquette Branch Prison. Johnson was placed on loss-of-privilege (LOP) status for ten days between January 5 and 15. During this time period, Johnson was not allowed to use the telephone. Johnson used the telephone four times between January 5 and 6. As a result, on January 7, 2017, Corrections Officer Basal issued Johnson an NOI notifying Johnson that he could face an additional 90-day phone restriction. (ECF No. 61-6, PageID.363.) The next day, on January 8, 2017, Johnson signed the NOI form and checked the box to request a hearing. (*Id*.) These facts are also not in dispute.

On January 17, 2017, Assistant Resident Unit Supervisor (ARUS) Govern called out Johnson for a hearing on the NOI issued by Basal. On that date, the NOI was changed to indicate that Johnson did not wish to have a hearing. These points are also not in dispute.

The parties, however, disagree over how the changes to the NOI came to be made. First, Johnson says that Defendant Govern altered NOI without his consent to indicate that Johnson waived the hearing and accepted the recommended disposition. Johnson says that Govern took this action in retaliation for Johnson's Prison Rape Elimination Act (PREA) grievance against officer Dahlstrom. Johnson says that Defendant Govern told him "You are lying on Officer Dah[l]strom, I got Officer Dah[l]strom back, if you don't sign off that grievance, I am going to teach you

a lesson and put a case on you, you think you smart, now try me." (ECF No. 12, PageID.96.) (ECF No. 63-1, PageID.409 (affidavit of Johnson).)

Defendant Govern says that Johnson stated that he no longer wanted a hearing and would accept the 90-day telephone restriction. Defendant Govern then changed the form to reflect the waiver and consent. (ECF No. 61-4, PageID.354 (affidavit of ARUS Govern).)

As mentioned in the introduction, Govern's motion turns on a question of timing. Johnson says he filed his PREA grievance against Dahlstrom on January 15, 2017. (ECF No. 63-1, PageID.409.) The document on file with the Court indicates an incident date of January 15, 2015. (ECF No. 61-7, PageID.365.) The document appears to have been written on that date. (*Id*.) But the document also indicates that it was received by the PREA Coordinator / Inspector on January 25, 2017. (*Id*.)

Johnson also wrote a letter to the Warden regarding his allegations against Dahlstrom. (*Id*., PageID.366.) This letter also indicates that it was written on January 15, 2017. (*Id*.) The investigation associated with this letter indicates that it was received on January 19, 2017. (ECF No. 61-8, PageID.372.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV. Analysis

Defendant moves for dismissal based upon qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right

that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232-233. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.*

### 1. Retaliation

Defendant Govern argues that he was not aware of any prior protected conduct by Johnson when he changed the NOI to reflect that Johnson waived the hearing and accepted the restriction. Johnson disagrees, arguing that Defendant Govern altered the NOI against his will in order to retaliate against Johnson for filing a PREA grievance against Dahlstrom.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to support a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "If the defendant can show that he would have taken the same actin in absence of

protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399.

Defendant Govern argues that the timing of events in this case essentially breaks the required causal link between the protected conduct by Johnson and the allegedly adverse action by Govern. In other words, if Govern did not know about the PREA grievance on January, then he could not have been retaliating against Johnson for filing this grievance on January 17.

Some of the facts in the record support Govern's position. First, the PREA grievance states:

> **PRISON RAPE ELIMINATION ACT (PREA)**
> **PRISONER GRIEVANCE FORM (STEP I)** 04/2016
>
> **Instructions:** This form is only to be used to file a grievance alleging sexual abuse. The PREA Grievance process is a two-step process including the PREA Prisoner Grievance (Step I) and the PREA Prisoner Grievance Appeal (Step II). The Step II decision constitutes the agency's final determination. The Goldenrod copy of this form is to be retained by the grievant/victim, all other copies must be submitted to the PREA Coordinator.
>
> Date Received by PREA Coordinator/Inspector: 1/25/17
>
> Grievance Identifier: MBP 1701 1 9789 PREAP
>
> Be brief and concise in describing your PREA allegation. If you have any questions concerning the PREA Grievance procedure, refer to PD 03.03.140 available in the Prison Library.
>
> Name (print last, first): Johnson Lorenzo | Number: 176204 | Institution: MBP | Lock Number: OL15 | Date of Incident: 1-15-17 | Today's Date: 1-15-17
>
> State clearly and concisely the PREA allegation. Use separate PREA Grievance forms for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documentation (if provided) must be submitted with this form. PREA Grievances must be submitted in accordance with PD 03.03.140. Indicate whether this is a PREA Grievance, an Emergency PREA Grievance or a Third-Party PREA Grievance.
>
> ☑ PREA Grievance     ☐ Emergency PREA Grievance     ☐ Third-Party PREA Grievance
>
> On Jan 15, 2017. Officer Dahestrim took a TV that was on Plaintiff Bunk. When Plaintiff returned from NOON Chow C/o Dahestrim called Plaintiff to the Officer station and stated: I got this off your bunk and you're on L.O.P. Plaintiff admitted that the TV was on his bunk and he was on L.O.P. Plaintiff asked C/o Dahestrim, "what was he going to write? C/o Dahestrim stated: I will let you know later. This statement was witness by officer Whittney. Later when officer Whittney was out of the Officer station C/o Dahestrim called Plaintiff back to the officer station and stated "I want to see that." Plaintiff asked see what? C/o Dahestrim "Pointed" to Plaintiff crotch. Plaintiff stated: "NO Way I am not into that." C/o Dahestrim then stated: "Well I am writing the ticket
>
> Continue Next Page
> Sexual Harassment
>
> Grievant's Signature     Victim Authorizes Third-Party Filing ☐ Yes ☐ No
>
> **RESPONSE:**
> Allegation Investigated? ☑ Yes AIPAS No: 19789  ☐ No  (If No, give detailed explanation.)

(ECF No. 61, PageID.365.)

This matter was investigated by the prison. The investigation report states in part:

- 8 -

> On 1/19/17 prisoner Johnson sent a letter to the Warden's office alleging that he was being harassed by staff members for a grievance filed on 1/15/17 against CO Dahlstrom for sexual harassment. He names ARUS Govern, CO Skytta, CO Basal, as staff threatening him with retaliation if he did not sign off on a grievance. It should be noted that subsequent to these claims a grievance was received in the PREA Coordinator's office but not until 1/25/17, three days after an investigation was ordered by the Warden's office on 1/23/17. It is also relevant to note that the grievance was received one day after prisoner Johnson was contacted by this investigator relative to his allegations.
>
> Prisoner 176204 Johnson alleges that on 1/15/17 CO Dahlstrom took his television and later told him he could get it back if Johnson would show CO Dahlsrom his penis. It should be noted that prisoner Johnson was written a class II misconduct by CO Dahlstrom. A statement provided by CO Whitney indicates she was present during this exchange with prisoner Johnson and she did not observe any unprofessional conduct, statement is attached.
>
> CO Dahlstrom denies making any comment of this nature and states the television was taken because the prisoner was on LOP.
>
> Questionnaire's sent to ARUS Govern, CO Skytta, and CO Basal are all consistent, that no discussion about a grievance occurred with prisoner Johnson. Their statements are credible as the alleged harassment occurred between 1/17/17 and 1/19 17, however the grievance was not received until 1/25/17 well after an investigation had been initiated.

(ECF No. 61-8, PageID.378-379.)

In the opinion of the undersigned, Johnson has failed to establish that Defendant Govern changed the NOI form on January 17, 2017, to reflect that Johnson waived the hearing and accepted the telephone restriction as a result of a grievance that Johnson had filed by on Corrections Officer Dahlstrom. The record shows that the grievance was not received and therefore not "filed" until January 25, 2017. The record also shows that Johnson's first complaint about Corrections Officer Dahlstrom occurred on January 19, 2017, when he sent a letter to the warden. Therefore, Defendant Govern did not have knowledge of the grievance at the time he changed the NOI form. It is respectfully recommended that the Court dismiss Johnson's retaliation claim.

**2. Equal protection**

Johnson says that Defendant Govern treated him differently by arbitrarily denying him a NOI hearing. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Johnson does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005). In addition, prisoners do not have a fundamental right to photocopies under the Constitution.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id*. (quoting *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Johnson must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no

rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In the opinion of the undersigned, Johnson has not shown that Defendant Govern treated him differently than any other prisoner. Defendant Govern has established that he changed the NOI form after he called Johnson out for a hearing and Johnson indicated that he no longer wanted a hearing and would accept the restrictions. There exists no evidence that can support a claim that Defendant Govern treated Johnson in an arbitrary and discriminatory manner or differently than how he treated other similarly situated prisoners. In the opinion of the undersigned, Johnson's equal protection claim should be dismissed.[2]

## V. Recommendation

I respectfully recommend that the Court grant Defendant's motion for summary judgment (ECF No. 60) and dismiss this case.

Dated: February 4, 2020  /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE

---

[2] There exists documentary evidence that establishes Johnson used the telephone in violation of the restriction imposed against him. (ECF No. 61-5, PageID.357.) Defendant Govern was aware of this evidence at the time he called Johnson out for his hearing on January 17, 2017. (ECF No. 62, PageID.401.) Defendant Govern could have held the hearing on that date and taken Johnson's statement. There existed enough evidence to impose the telephone restriction on Johnson. If Defendant Govern was retaliating or discriminating against Johnson, he could have found Johnson guilty after holding a hearing. Defendant Govern did not hold the hearing because the evidence establishes that Johnson waived the hearing.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).